O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | | |
|---|---|---|
| CHALEE REID, | ) | Case No. CV 10-4820-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Chalee Reid ("Plaintiff") seeks review of the Commissioner's final decision denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. For the reasons stated below, the Commissioner's decision reversed, and this action should be remanded for further proceedings.

**I.  Factual and Procedural Background**

Plaintiff was born on January 19, 1955. (Administrative Record ("AR") at 121). She has relevant work experience as an insurance adjuster and office clerk. (AR at 35-36).

Plaintiff filed an application for DIB on January 23, 2007, alleging that she has been disabled since October 2, 2005, due to chronic migraine headaches, fibromyalgia, back and neck injuries, extreme fatigue, and radiating muscle pain. (AR at 132). The Social Security Administration denied Plaintiff's application initially and on reconsideration. (AR at 30, 76-79, 83-88).

An administrative hearing was held before Administrative Law Judge Mary L. Everstine ("the ALJ") on April 29, 2009. (AR at 52-73). Plaintiff, who was represented by counsel, testified at the hearing. (AR at 55-67). A vocational expert also testified at the hearing. (AR at 66-72). The ALJ issued a decision on November 4, 2008, denying Plaintiff's application. (AR at 30-36). The ALJ found that Plaintiff: (1) has not engaged in substantial gainful activity since her alleged onset date of disability through her date last insured of September 30, 2008, (step 1); (2) suffers from the severe impairments of fibromyalgia and migraine headaches (step 2); (3) does not have any impairments that meet or equal the criteria of a listed impairment (step 3); (4) has a "prophylactic" residual functional capacity ("RFC") to perform light work, limited by a sit/stand option and an ability to lift and carry no more than five pounds frequently and ten pounds occasionally; and (5) is able to perform her past relevant work as an insurance adjuster and office clerk (step 4). (AR at 32-33, 35-36). The Appeals Council denied review on May 12, 2010. (AR at 1-3).

Plaintiff commenced this action for judicial review on June 29, 2010. The parties filed a joint statement of disputed claims on December 16, 2010. Plaintiff contends that the ALJ failed to give proper consideration to the opinion of her treating physician and to her subjective symptom testimony. Plaintiff seeks remand for payment of

benefits or, in the alternative, remand for further administrative proceedings. (Joint Stipulation at 22). The Commissioner requests that the ALJ's decision be affirmed. (Joint Stipulation at 23).

**II.  Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. *Lingenfelter*, 504 F.3d at 1035 (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-721.

**III.  DISCUSSION**

   **A.  Plaintiff's Treating Physician's Opinion**

Plaintiff contends that the ALJ improperly rejected the opinion of her treating physician, Logan Bundy, M.D., who opined that Plaintiff was

permanently disabled and unable to perform full-time, competitive work. (AR at 227, 269).

The Commissioner is directed to weigh medical opinions based in part on their source, specifically, whether proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Generally, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. *See id.; Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

The Commissioner must also consider whether a medical opinion is supported by clinical findings and is contradicted by other medical evidence of record. The Commissioner may reject the uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. *See Lester*, 81 F.3d at 831. A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. *Lester*, 81 F.3d at 830. If a treating professional's opinion is contradicted by an examining professional's opinion, which is supported by different independent clinical findings, the Commissioner may resolve the conflict by relying on the latter. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (ALJ may reject opinion of treating physician in favor of examining physician whose opinion rests of independent clinical findings).

Dr. Bundy began treating Plaintiff in October 1999. (AR at 227). The record contains Dr. Bundy's treatment notes from November 2004

through November 2008. (AR at 235-57, 271-73). Plaintiff reported a history of migraine headaches, diffuse joint pain, muscle discomfort, fatigue, and insomnia. (AR at 235-57, 271-73, 288). Plaintiff's x-rays and lab tests were normal. (AR at 227, 229, 266). Dr. Bundy diagnosed Plaintiff with fibromyalgia, migraine headaches, and chronic fatigue. (AR at 228, 265). Dr. Bundy prescribed Prozac (an antidepressant), Midrin (a non-narcotic analgesic with sedative), Tylenol PM (pain reliever with sleep aid), and ranitidine (acid reducer). (AR at 227-28, 265). In 2007, Dr. Bundy reported that Plaintiff's prognosis was poor. (AR at 227). He concluded that Plaintiff was "permanently disabled" and unable to perform full-time, competitive work. (AR at 227).

Dr. Bundy also completed a "Multiple Impairment Questionnaire" and a "Fibromyalgia Impairment Questionnaire." (AR at 228-34, 265-70). He indicated that Plaintiff could sit no more than one hour in an eight-hour workday; stand or walk no more than one hour in an eight-hour workday; lift no more than 20 pounds occasionally; and carry no more than five pounds occasionally. (AR at 230-31, 268-70). Dr. Bundy found that Plaintiff was precluded or had "marked restrictions" in the following: kneeling; bending; stooping; pushing; pulling; using fingers or hands for fine manipulations; using arms for reaching; and grasping, turning, and twisting objects. (AR at 231-32, 269-70). Dr. Bundy based these limitations on Plaintiff's symptoms from her migraine headaches and fibromyalgia. (AR at 269).

In April 2009, Dr. Bundy confirmed his earlier assessments of Plaintiff's functional limitations, and reiterated his conclusion that Plaintiff was unable to perform full-time, competitive work. (AR at 264).

The ALJ rejected Dr. Bundy's opinion as to Plaintiff's residual

functional capacity and disability, but failed to state adequate reasons for doing so. (AR at 35). First, the ALJ found that the conservative treatment prescribed by Dr. Bundy was inconsistent with the work limitations assessed by him. (AR at 35). It is recognized, however, that the cause of fibromyalgia is unknown and there is no cure. *Benecke v. Barnhart*, 379 F.3d at 590; *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). Here, Dr. Bundy provided Plaintiff with medication, a widely-accepted treatment for fibromyalgia. The ALJ does not identify any sort of alternative treatment that could have been prescribed. Given the nature of fibromyalgia and the absence of any cure for the disease, conservative treatment was not a specific and legitimate reason for rejecting Dr. Bundy's opinion. *See, e.g., Lapeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 2010 WL 2317918, *1 (9th Cir. June 9, 2010) ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist.").

Next, the ALJ found that Dr. Bundy's opinion was unsupported by the objective evidence and was most likely based upon Plaintiff's subjective complaints. (AR at 34-35). In general, an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *See Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, ... or by objective medical findings"); *see also Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001). However, the diagnosis and treatment of fibromyalgia is associated with unique evidentiary issues. *See, e.g., Rogers v. Comm'r,*

*Soc. Sec. Admin.*, 486 F.3d 234, 245 (6th Cir. 2007). In such cases, a treating doctor's diagnosis may be based purely on a patient's reports of pain and other symptoms. *Benecke*, 379 F.3d at 590; *see also Sarchet*, 78 F.3d 305, 306 (7th Cir. 1996) (noting that fibromyalgia symptoms are "entirely subjective"). There are no laboratory tests to confirm the presence or severity of fibromyalgia. *Id.*; *Rollins*, 261 F.3d at 855; *Sarchet*, 78 F.3d at 306. Therefore, it was improper for the ALJ to reject Dr. Bundy's opinion based on a lack of objective medical evidence. *Benecke*, 379 F.3d at 594; *see also Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (reversing where the "ALJ effectively required 'objective' evidence for a disease [i.e., fibromyalgia] that eludes such measurement.").

The ALJ further discounted Dr. Bundy's opinion because he was a family practitioner and not a specialist. (AR at 35); *see Benecke*, 379 F.3d at 594 (explaining that rheumatology is the relevant specialty for fibromyalgia). This was not a legitimate reason for rejecting his opinion either. Although the regulations generally provide that greater weight be given to opinions of specialists, they do not require that a physician be board-certified to provide medical evidence. *See* 20 C.F.R. § 404.1513(a) (generally more weight is given to the opinion of a treating source); *see also* 20 C.F.R. § 404.1527(d)(5) (more weight is generally given to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist). Because Dr. Bundy was a treating physician, his opinion was entitled to more weight than other sources, irrespective of whether he was specialist in fibromyalgia. *See Lester*, 81 F.3d at 833 (treating physician's opinion may not be discredited on the ground that he is not a board-certified psychiatrist).

The ALJ also relied on the opinion of the one-time examining physician, Thomas Hascall, M.D., to support the rejection of Dr. Bundy's opinion. (AR at 34, 213-16). Dr. Hascall conducted a comprehensive internal medicine evaluation of Plaintiff in April 2007. (AR at 213-16). He diagnosed Plaintiff with migraine headaches and fibromyalgia, noting that Plaintiff had 18 out of 18 tender points. (AR at 34, 216). Examination of Plaintiff revealed good muscle tone, bulk, motor strength, and grip strength. (AR at 216). Dr. Hascall found no muscle spasms, crepitus, joint effusion, joint deformity, cyanosis, clubbing or edema in the extremities. (AR at 216). Based on these findings, Dr. Hascall concluded that Plaintiff was able to sit without restriction, stand and walk without restriction, and lift and carry 25 pounds frequently and 50 pounds occasionally. (AR at 34, 216-17). However, Dr. Hascall qualified his opinion by noting that "the true extent of [Plaintiff's] functional impairment is likely not reflected by this one time examination," as she suffers from fibromyalgia. (AR at 217). Dr. Hascall recommended that "[a]n updated note from [Plaintiff's] primary care provider stating what he or she feels is her impairment based on her fibromyalgia" be obtained in order determine her final functional assessment. (AR at 217).

The ALJ credited Dr. Hascall's opinion based on the "supportability with medical signs and laboratory findings; consistency with the record; and area of specialization." (AR at 35, 213-17). These reasons did not constitute a proper basis for rejecting Dr. Bundy's treating physician opinion. The ALJ's first two reasons (the supportability of medical signs and laboratory findings and consistency with the record) were not legitimate, because, as noted above, there are no objective signs or tests to confirm the severity of a claimant's fibromyalgia. *See Benecke*,

379 F.3d at 590; *Green-Younger,* 335 F.3d at 108; *see also Sarchet*, 78 F.3d at 306. In other words, the absence of objective medical evidence does not establish that Plaintiff is not impaired by her fibromyalgia. The ALJ's third reason for crediting Dr. Hascall's opinion (area of specialization) is simply not supported by the record. Dr. Hascall, who is an internist, is not a specialist in fibromyalgia. *See Benecke*, 379 F.3d at 594. Furthermore, the significance of Dr. Hascall's opinion is undermined by his own concession that Plaintiff's fibromyalgia may not be properly assessed based on a one-time examination. Indeed, Dr. Hascall conducted an extremely limited review of the medical record. According to his report, Dr. Hascall looked at only two handwritten medical notes and one MRI of Plaintiff's brain. (AR at 213). Though Dr. Hascall recommended review of an updated report from Plaintiff's treating physician before issuing a final assessment of Plaintiff's limitations, there is no indication that any updated records were provided to him. Thus, the ALJ's decision to credit Dr. Hascall's opinion was not reasonable.

Finally, the ALJ criticized Dr. Bundy's opinion because "the ultimate conclusion of permanent disability . . . and inability to work is reserved for the commissioner to determine." (AR at 35). However, Dr. Bundy's conclusion that Plaintiff is disabled is not, in itself, a legitimate reason for rejecting his entire opinion. *See, e.g., Reddick*, 157 F.3d at 725 (explaining that the Commissioner is not relieved of the obligation to state specific and legitimate reasons for rejecting a treating physician's opinion even if the treating physician rendered an opinion on the ultimate issue of disability); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

//

Accordingly, the ALJ failed to provide adequate reasons for rejecting Dr. Bundy's opinion and the decision to deny benefits is not supported by substantial evidence.

**IV. <u>Conclusion</u>**

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam)). Remand for further administrative proceedings is appropriate "if enhancement of the record would be useful." *Benecke*, 379 F.3d at 593; *see Harman*, 211 F.3d at 1179 (explaining that "the decision whether to remand for further proceedings turns upon the likely utility of such proceedings"). Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, and the record has been fully developed, *Lester*, 81 F.3d at 834; or where remand would unnecessarily delay the receipt of benefits, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

Here, remand for further administrative proceedings is warranted, as the medical evidence was incomplete. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2006) ("The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous.") (citing *Tonapetyan*, 242 F.3d at 1150). In particular, the consultative examiner requested an updated record

from Plaintiff's treating physician to properly assess Plaintiff's fibromyalgia, but there is no indication that such a record was ever provided. If the Commissioner is going to rely on a consultative examination in making the disability determination, that examination must be complete. Should further testimony from a vocational expert be taken, the hypothetical questions posed to the vocational expert must clearly and accurately reflect all of the limitations that impair Plaintiff's ability to work.[1]

**ORDER**

Accordingly, this action is remanded for further proceedings consistent with this Memorandum Opinion.

DATED: January 7, 2011

*MARC L. GOLDMAN*
_____
MARC L. GOLDMAN
United States Magistrate Judge

---

[1] Because the record is not sufficiently developed to support a determination of disability without further proceedings, the Court will not decide whether the remaining issue raised by Plaintiff would independently require reversal. See *Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003) (where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate). The Court recommends, however, that the ALJ consider all of Plaintiff's arguments when determining the merits of her case on remand.